UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI E. GARCIA, <br><br>　　　　　　Petitioner, <br><br>　　v. <br><br>JIM MACDONALD, Warden, <br><br>　　　　　　Respondents. | Case No. 15-cv-04484-WHO <br><br> **ORDER DENYING RESPONDENT'S MOTION FOR RECONSIDERATION AND MOTION TO DISMISS OR STAY THE HABEAS PETITION** <br><br> DKT. NOS. 31, 45 |

## INTRODUCTION

Respondent asks that I reconsider my March 1, 2017 ruling granting petitioner's motion for an evidentiary hearing on his juror bias claim (Dkt. No. 25) in this habeas corpus proceeding because I misapplied the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and because under California law, the procedural bar from *In re Dixon*, 41 Cal. 2d 756 (1953) (the "*Dixon* bar") applies. He also moves to dismiss the habeas petition, or stay it, because petitioner has discovered different facts relating to his claim of juror bias than were presented to the state courts. Reconsideration is not appropriate, for the reasons set forth below, and the core of petitioner's habeas claim remains the same, despite some variance in the facts presented. Accordingly, I DENY respondent's motions.

## BACKGROUND

Petitioner brings a claim for habeas relief on the basis of juror bias. He asserts that one of the jurors from his trial, referred to as Juror No. 22 at trial and here, was actually or impliedly biased and that he was therefore denied a fair trial under the Fifth, Sixth, and Fourteenth Amendments.

Juror No. 22 is related to several key individuals and witnesses in this case, including the

victim Jane Doe (also referred to by her first name Kayli, during the trial), the victim's mother, Stacey Forstell, and the victim's grandmother, Sandy Castaldo. Although Juror No. 22 indicated that Sandy Castaldo was her cousin during the voir dire process, she did not indicate any relationship to Stacey Forstell or the victim. Petitioner asserts that this omission was misleading and dishonest and suggests actual bias on the part of Juror No.22. Pet. 12-13. He also asserts that Juror No. 22's familial relationship to the victim and the witnesses is sufficient to find implied bias.

During voir dire, the presiding judge listed potential witnesses in the case, including Doe, Forstell, and Castaldo. Augmented Reporter's Transcript ("ART") at 29 (Dkt. No. 15-4). The court then asked if any potential jurors were familiar with the names of the potential witnesses. *Id.* Juror No. 22 volunteered that she was related to Castaldo:

> THE COURT: Anyone recognize any of the persons involved in this case? Juror No. 22?
>
> PROSPECTIVE JUROR NO. 22: I heard you say the name Sandy Castaldo.
>
> THE COURT: Yes.
>
> PROSPECTIVE JUROR NO. 22: That's my cousin.
>
> THE COURT: Again, do you see her a lot?
>
> PROSPECTIVE JUROR NO. 22: No, I do not.
>
> THE COURT: When is the last time you saw her?
>
> PROSPECTIVE JUROR NO. 22: I saw her at the bank, and I'm going to say three months ago. She's married to my cousin Sal.
>
> THE COURT: I don't know the nature of her testimony. And there are witnesses who may or may not be at the scene of an alleged incident. There are other witnesses who take statements. There are other witnesses who are quite peripheral. I have no idea where she falls on that continuum. I'll let the attorneys ask you some questions.
>
> Let's assume, for the sake of argument, she came in and she testified. Would you evaluate her testimony by the same standards you would any other witness?
>
> PROSPECTIVE JUROR NO. 22: Yes. Yes, I would.
>
> THE COURT: Do you think you would believe anything she said

> just because she's your cousin?
>
> PROSPECTIVE JUROR NO. 22: No, I'm not well, I'm not that close to her. I mean, I just thought I should let you know I'm related.
>
> THE COURT: We do need to know you're related. It's very important.

ART 76-77.

Although Castaldo, Doe, and Forstell are all related–Castaldo is Doe's grandmother and at the time was her guardian, and Forstell is Doe's mother–Juror No. 22 only volunteered that she knew Castaldo.

In his petition for state habeas relief, which petitioner incorporates by reference in his federal petition, petitioner submitted declarations from Stacey Forstell and Juror No. 22. In her declaration Juror No. 22 elaborates on her relationship to the case participants and explains why she failed to disclose more information during voir dire:

> 1. I served as a juror in the trial of People v. Eli Garcia, Monterey County Case No. SS120091A. I was Juror No. 22.
>
> 2. Salvador Castaldo is my cousin. Sandy Castaldo is married to Salvador. Stacey Castaldo nee Forstell is Mr. Castaldo's daughter by a prior marriage. Kayli is Stacey's daughter.
>
> 3. During voir dire, I identified Sandy Castaldo as my cousin. I anticipated that I would be dismissed from serving when I disclosed my relation to Sandy. I was not trying to get out of jury service. However, I expected that my relation to a witness would automatically disqualify me from service in the case.
>
> 4. I expected that the Court or the attorneys would ask me about my relation with Stacey Forstell. I was never asked about my relation to Stacey. If asked, I would have disclosed that I was related to Stacey.
>
> 5. I did not recognize the name Kayli, Stacey's daughter. Kayli was the victim in the case.
>
> 6. Kayli and Sandy testified during the trial.

Declaration of [Juror No. 22] (Dkt. No. 15-6, p 111-112).

Stacey Forstell further outlines Juror No. 22's relationship to the case participants in her declaration:

> 1. I am Kayli's mother. I am thirty (30) years old. My maiden name is

3

Stacey Castaldo. I married and took my current name in 2008.

2. My father is Salvatore "Sal" Castaldo.

3. Sal has three sisters. One of those sisters is Anne Jay. Anne Jay is very close with her and Sal's cousin, [Juror No. 22]. Anne and [Juror No. 22] have been close since I was a child.

4. When I was a child, Anne and [Juror No. 22] operated the Grand Deli in Pacific Grove, California. I spent a substantial amount of time with Anne and [Juror No. 22] at Grand Deli before the age of fourteen. I also spent time at [Juror No. 22's] house and saw [Juror No. 22] at various family functions.

5. When I was twelve years old, my mother and father divorced. When I was fourteen, my father married his current wife, Sandy Castaldo. There was a significant amount of turmoil in my family at that time, and I had much less interaction with many of my relatives.

6. I have not had substantial interaction with [Juror No. 22] since my father remarried. I am friends with [Juror No. 22] on Facebook and was friends with her before October 2012. In October 2012, my username on Facebook was "Stacey Forstell."

7. I became pregnant with Kayli and gave birth to her when I was fourteen years old. When Kayli was less than one year old, I was unable to take custody of her, and Sal and Sandy assumed responsibility of Kayli.

8. Sal and Sandy retained custody of Kayli throughout her childhood.

9. I am informed and believe that when Kayli was a child she met and spent time with [Juror No. 22] when she visited her aunt Anne.

10. In January 2011, Kayli and Eli Garcia went to Los Angeles. Mr. Garcia was arrested in Los Angeles. I traveled to Los Angeles to meet Kayli. Kayli lived with me immediately after she returned from Los Angeles and I have since gained legal custody of Kayli.

11. Prior to the trial of Eli Garcia, I had several conversations with the prosecutor in this case, Mr. Breeden. I also met on several occasions with the Victim Witness Advocate that had been assigned to Kayli. Her first name was Elma.

12. Mr. Breeden subpoenaed me to appear as a witness in the trial of Mr. Garcia.

13. On October 23, 2012, I went to the Monterey County Superior Court for Mr. Garcia's trial. Initially, Sandy and I were asked to wait in a separate room from all other potential witnesses. When Sandy entered the courtroom to testify, I waited in the courtroom hallway. When Sandy exited the courtroom, she was crying and exclaimed: "Your f**king cousin is on the jury!" She explained that she was referring to [Juror No. 22].

14. Immediately after I learned that [Juror No. 22] was on the jury, I informed the Victim Witness Advocate, Elma about our family's relation

4

> to [Juror No. 22]. The court was on break at this time. Elma informed me that she would tell Mr. Breeden, and she entered the courtroom. Elma exited the courtroom and told me that she had informed Mr. Breeden and that Mr. Breeden said that I was excused from the subpoena and would not be testifying. Kayli and I went to the victim's compensation office. I did not enter the courtroom.

Declaration of Stacey Forstell (Forstell Decl.) (Pet. Ex. 1), (Dkt. No. 1-1).

## LEGAL STANDARD

Under Rule 54(b), a district court may revise or reconsider an order that resolved fewer than all of the claims at issue in a proceeding at any time before final judgment has been entered. Fed. R. Civ. P. 54(b).

## DISCUSSION

Respondent raises two primary arguments in moving for reconsideration: (1) I improperly applied AEDPA in granting respondent an evidentiary hearing, and (2) petitioner's claim is procedurally barred by *Dixon*.

## I. WHETHER THE COURT MISAPPLIED AEDPA

Respondent argues that I did not apply the proper AEDPA standard for two reasons: first, I failed to find that the state court's denial of petitioner's juror bias claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" 28 U.S. Code § 2254(d); and, second, because I failed to address § 2254(e)(2), which limits the ability of district courts to grant evidentiary hearings.

### A. Whether the state court's decision satisfies § 2254(d)

Under AEDPA, when a state habeas claim has been adjudicated on the merits in state court, a federal district court may only grant federal habeas relief if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts." 28 U.S. Code § 2254(d). "[E]vidence introduced in federal court has no bearing on" whether a state court decision meets the standards outlined by § 2254(d) – instead a federal district court must make this assessment in light of the record the state court had before it. *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). As a

5

federal court cannot rely on evidence introduced in a federal evidentiary hearing in assessing whether a state court's decision was unreasonable, generally, a federal court should not grant an evidentiary hearing under AEDPA unless it has first determined that the state court decision was unreasonable based on the record before it.

Respondent is correct that I did not clearly make this finding in my prior order. I do so now.

The Sixth Amendment guarantees a criminal defendant "the right to a speedy and public trial, by an impartial jury." A fair jury trial is one conducted "by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Id.* "Due process means a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A court may presume that a juror was not impartial if she "failed to answer honestly a material question on *voir dire*" and "a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984).

Petitioner asserts in his juror bias claim that he was denied these constitutional protections because Juror No. 22 was biased and not impartial. Respondent does not contest that petitioner has presented a colorable claim of juror bias since Juror No. 22 failed to disclose her relationship to Doe or Stacey Forstell during voir dire. However, respondent argues that if the California Supreme Court decided petitioner's juror bias claim on the merits, I must presume that its implied finding that Juror No. 22 was not actually biased was correct. Reconsideration Mot. at 2. It asserts that state court findings of fact, including implied factual findings made by appellate courts, must be presumed correct unless rebutted by clear and convincing evidence. *See Marshall v. Lonberger*, 459 U.S. 422, 431-36 (1983); *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

While this is generally true, a state court's factual findings need not be presumed correct where the state court employed an inadequate fact-finding process. *See Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014). The Ninth Circuit has "held repeatedly that where a state court makes

6

factual findings without an evidentiary hearing or other opportunity for the petitioner to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference." *Id.* (citing *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004) ("If, for example, the state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts." (internal quotation marks omitted)); *Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) ("But with the state court having refused [petitioner] an evidentiary hearing, we need not of course defer to the state court's factual findings—if that is indeed how those stated findings should be characterized—when they were made without such a hearing.").

Petitioner requested an evidentiary hearing to develop his juror bias claim before both the California Court of Appeal and the California Supreme Court. Despite presenting these courts with declarations that raised a colorable claim of juror bias, *see* Dkt. No. 25 at 10-13 (discussing the merits of petitioner's juror bias claim), he was denied an evidentiary hearing in both courts. His petition was denied with no explicit factual findings. Assuming that the California Supreme Court adjudicated petitioner's juror bias claim on the merits, the state courts' implicit finding that Juror No. 22 was not actually biased was unreasonable under § 2254(d)(2) because the court failed to employ an adequate fact-finding process. *See Hurles*, 752 F.3d at 790. The failure to provide petitioner with an evidentiary hearing is especially concerning in this case where assessing the merits of petitioner's claim of juror bias will rest largely on credibility determinations and may be impossible to properly assess without providing petitioner some means of cross-examining Juror No. 22.

I conclude that, if the state court adjudicated petitioner's juror bias claim on the merits, it acted unreasonably in implicitly finding that Juror No. 22 was not biased because it failed to employ an adequate fact-finding process. The state court's implied factual findings were unreasonable under § 2254(d)(2).

### B. Whether § 2254(e)(2) bars an evidentiary hearing

Respondent asserts that I erred by granting an evidentiary hearing without addressing § 2254(e)(2). Reconsideration Mot. at 2. Section 2254(e)(2) states: "If the applicant has failed to

develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claims." Respondent argues that petitioner failed to develop this claim in state court because, even though he submitted a declaration from Juror No. 22 in state court, the declaration "omits key information about petitioner's claims." Reconsideration Mot. at 8. For example, respondent asserts that in preparing this declaration petitioner "did not ask Juror No. 22 why she did not disclose her relationships with Stacey and Doe as the proceedings progressed, whether she recognized Doe when she testified, what the extent of her relationships with Stacey or Doe was, and whether those relationships affected her ability to be impartial." *Id.* He contends that petitioner's "failure to develop the record when Juror No. 22 was willing to provide a declaration precludes a hearing in this Court." *Id.*

Respondent's argument that petitioner failed to develop the factual record is not convincing. As petitioner explains, the fact that Juror No. 22 was willing to provide a declaration on some issues does not mean she would have been willing to provide a declaration on more sensitive or adversarial issues, or, for example, directly admit bias against petitioner. Given the sensitive nature of petitioner's juror bias claim, petitioner acted reasonably by taking a delicate approach in questioning Juror No. 22 while attempting to obtain a voluntary declaration from her. The more accusatory questions respondent asserts petitioner should have asked are more appropriately posed in an adversarial proceeding where petitioner has the opportunity to cross-examine or impeach Juror No. 22, and where the court would have the opportunity to make a credibility determination as to Juror No. 22's statements. This is why petitioner sought an evidentiary hearing in the state court to further develop his juror bias claim. And this is precisely why the Ninth Circuit has held that "[a] petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim" under § 2254(e)(2). *Hurles*, 752 F.3d at 791.

Because petitioner attempted to develop the facts of his juror bias claim in state court and did not further develop them only because he was denied an evidentiary hearing, petitioner did not fail to develop the factual record in state court under § 2254(e)(2). Section 2254(e)(2) does not bar an evidentiary hearing in this case.

8

### C. Is petitioner entitled to an evidentiary hearing?

Assuming that petitioner's juror bias claim was determined on the merits, I reaffirm my prior conclusion that he is entitled to an evidentiary hearing. If a petitioner has not failed to develop the factual basis of his claim in state court, a federal court must grant an evidentiary hearing if he (1) would be entitled to a hearing under *Townsend v. Sain*, 372 U.S. 293, 313 (1963), and (2) if his allegations, if true, would entitle him to habeas relief, *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010).

A habeas petitioner is entitled to an evidentiary hearing under *Townsend* for several reasons, including if (1) "the state factual determination is not fairly supported by the record as a whole"; or (2) "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing." *Townsend*, 372 U.S. at 313. I have already concluded that the fact-finding procedure employed by the state court was unreasonable as it failed to provide petitioner with an evidentiary hearing on his juror bias claim. Petitioner's claim meets the *Townsend* requirement.

Petitioner's claim that Juror No. 22 was dishonest in failing to disclose her relationship to Stacey Forstell and Doe, and was biased against him, if true, would entitle him to habeas relief. *Stanley*, 598 at 624. All criminal defendants are entitled to a fair trial before "a panel of impartial, indifferent jurors." *Irvin*, 366 U.S. at 722. A defendant is deprived of his right to a fair trial and to due process when a juror is actually biased against him. *See Phillips*, 455 U.S. at 217 ("Due process means a jury capable and willing to decide the case solely on the evidence before it."). While actual bias may be demonstrated in various ways, a court should presume that a juror was biased if she "failed to answer honestly a material question on *voir dire*" and "a correct response would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556-57. If petitioner can establish that Juror No. 22 was dishonest in failing to disclose her relationship to Stacey Forstell or Doe and that this relationship, if revealed, would have justified dismissing Juror No. 22 for cause, he will be entitled to relief.

As the state court implemented an inadequate fact-finding procedure and, petitioner's allegations of juror bias, if true, would entitle him to habeas relief, petitioner is entitled to an

1 evidentiary hearing.

2 I conclude that under the proper AEDPA standard my prior order, granting petitioner's request for an evidentiary hearing on his juror bias claim, should still stand.

## II. WHETHER THE *DIXON* BAR PROHIBITS PETITIONER'S JUROR BIAS CLAIM

Respondent has raised a new argument that petitioner's juror bias claim is procedurally barred under California's *Dixon* bar. Petitioner asserts that the *Dixon* bar does not apply because the California Supreme Court's decision was ambiguous. As respondent did not assert the *Dixon* bar in his initial Answer, I did not address this argument in my prior order and do so for the first time now.

In seeking habeas relief before the California Supreme Court, petitioner asserted one two-part claim for relief: Juror No. 22 was biased, and his trial counsel was ineffective in failing to identify this bias. In denying the petition, the California Supreme Court cited to *Dixon* and *Duvall* without explanation or analysis. As the Supreme Court held in *Lee*, *Dixon* is an adequate California procedural bar sufficient to preclude federal review. *Lee*, 136 S.Ct. at 1805. The parties agree that *Duvall* is not an adequate procedural bar to prohibit federal review and indicates that a claim was determined on the merits. *See e.g. Richardson v. Curry*, No. 04-cv-2712-RMW, 2015 WL 1064608 at *3 (N.D. Cal. Mar. 11, 2015). This raises the question of whether the California Supreme Court's decision clearly applied *Dixon* to petitioner's juror bias claim, or whether the decision was ambiguous.

A state court opinion is ambiguous when it is unclear as to whether the disposition of a claim is based on an independent state procedural bar or on the federal merits. *Colman v. Thompson*, 501 U.S. 722, 732-33 (1991). Because of this ambiguity, when a state court decision is ambiguous federal courts will not apply the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). A "state court opinion that summarily denies more than one claim with a citation to more than one state procedural bar is ambiguous, and therefore there is no procedural default if any one of the state procedural bars is not adequate and independent." *Johnson v. Haviland*, 2012 WL 1144059 at *7 (N.D. Cal. Mar. 30, 2012). "Under some circumstances, a federal court will be able

to resolve an ambiguous order. For example, if the order affirms a previous lower court order that relies on the same grounds and specifies which grounds are applicable to which claims, there is no reason to assume that the appellate court applied different grounds to different claims." *Koerner v. Grigas*, 328 F.3d 1039, 1052 (9th Cir. 2003). However, where a state court opinion is ambiguous, generally it is not appropriate for a federal court to "usurp the role of the state courts" and attempt to "guess at which grounds might be applicable to which claims." *Id.*; *see also Valerio v. Crawford*, 306 F.3d 742, 774-74 (9th Cir. 2002)(en banc).

The parties agree that the California Supreme Court decision is ambiguous as it disposed of petitioner's juror bias and ineffective assistance claims by citing to two California procedural bars without clearly explaining which bar applies to which claim. Respondent argues that this ambiguity can be resolved and that the California court clearly intended to apply *Dixon* to petitioner's juror bias claim rather than his ineffective assistance of counsel claim, as *Dixon* does not apply to ineffective assistance claims. *See In re Robbins*, 18 Cal. 4th 770, 813 n.34 (1998) ("We do not apply [the *Dixon* bar] to claims of ineffective assistance of trial counsel, even if the habeas corpus claim is based solely upon the appellate record" (citing *People v. Mendoza Tello*, 15 Cal. 4th 264, 267 (1997))).

Petitioner rebuts that the California Supreme Court clearly did not intend to apply the *Dixon* bar to his juror bias claim as *Dixon* does not apply to habeas claims relying on evidence and exhibits "from outside the appellate record" unless that evidence "contains nothing of substance not already in the appellate record." *Id.* He asserts that his juror bias claim falls under this category as it relies on declarations from Juror No. 22 and Stacey Forstell that include material information not included within the appellate record.

There are certainly strong arguments that these declarations contain evidence of substance not included in the trial record. For example, Juror No. 22 states in her declaration that she "expected that the Court or the attorneys would ask me about my relation with Stacey Forstell. I was never asked about my relation to Stacey. If asked, I would have disclosed that I was related to Stacey." Declaration of [Juror No. 22] (Dkt. No. 15-6, p 111-112). This statement raises questions as the court did ask Juror No. 22 whether she recognized any of the witnesses, including

11

Stacey, and yet Juror No. 22 failed to disclose this information. Why she failed to disclose this information remains unclear. The declarations also speak to Juror No. 22's relationship to Sandy Castaldo, Stacey Forstell, and Doe. Juror No. 22 states in her declaration that "I anticipated that I would be dismissed from serving when I disclosed my relation to Sandy. I was not trying to get out of jury service. However, I expected that my relation to a witness would automatically disqualify me from service in the case." *Id.* Stacey Forstell reveals in her declaration that both she and her mother, Sandy, were shocked to discover that Juror No. 22 was on the jury: Stacey declares that when Sandy left the courtroom after testifying "she was crying and exclaimed: 'Your f**king cousin is on the jury!' She explained that she was referring to [Juror No. 22]." Declaration of Stacey Forstell (Forstell Decl.) (Pet. Ex. 1), (Dkt. No. 1-1). Stacey further declares that "[i]mmediately after I learned that [Juror No. 22] was on the jury, I informed the Victim Witness Advocate, Elma about our family's relation to [Juror No. 22]." *Id.* Juror No. 22's, Stacey's, and Sandy's surprise and reactions to Juror No. 22 being on the jury suggest that Juror No. 22's relationship to Stacey, Sandy, and Doe, was sufficiently close to make her an inadequate juror, or at least raise substantial questions about her impartiality. These facts are not part of the appellate record and are directly relevant to petitioner's juror bias claim. It seems, under the California state law, that *Dixon* would not apply to petitioner's juror bias claim.

While I do not think *Dixon* would apply to either of petitioner's claims before the California Supreme Court, federal courts cannot substantively review a state court's application of a state rule. Therefore, I cannot assess whether the California Supreme Court may have incorrectly applied the *Dixon* bar to petitioner's juror bias claim. Instead, I must determine whether the California Supreme Court unambiguously did apply the *Dixon* bar to plaintiffs' juror bias claim. While the parties have raised credible arguments why the California Supreme Court likely did not attempt to apply the *Dixon* bar to both of petitioner's claims, it appears substantially more likely that the Court intended to apply *Dixon* to the juror bias claim and not the ineffective assistance of counsel claim, as it does not apply *Dixon* to ineffective assistance claims as a blanket rule. If the Court intended to apply *Dixon* only to petitioner's ineffective assistance claim, it would have been going against well-established, non-merits based precedent. If it intended to

12

apply *Dixon* to petitioner's juror bias claim, it could have done so by reaching a different conclusion than I on whether petitioner's declarations contain evidence that is substantively different than that in the trial record. On this evidence I think it is clear that the Court intended to apply *Dixon* to petitioner's juror bias claim.

Although I conclude that the *Dixon* bar applies to petitioner's juror bias claim, he may still overcome this bar by demonstrating that he meets one of the exceptions to a procedural bar, such as cause and prejudice.

### A. Cause and Prejudice

Unless a habeas petitioner shows cause and prejudice, a district court may not reach the merits of "procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules" in raising the claim. *Clark v. Lewis*, 1 F.3d 814, 819 (9th Cir. 1993).

#### 1. Cause

To establish cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (applying *Carrier* standard to § 2255 motion). "Cause . . . requires a showing of some external impediment *preventing* counsel from constructing or raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (internal brackets omitted). A petitioner need not allege a constitutional violation in order to establish cause for the procedural default. *See Manning v. Foster*, 224 F.3d 1129, 1134 (9th Cir. 2000).

Ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 690 (1984), may constitute cause for the procedural default. *See Carrier*, 477 U.S. 478, 488 (1986); *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993). However, attorney ignorance, inadvertence, or error short of that which is constitutionally ineffective under the Sixth Amendment is not generally cause for a procedural default. *See Carrier*, 477 U.S. at 487.

As I have previously found, petitioner is likely able to show that his trial counsel's failure to inquire into Juror No. 22's relationship to Castaldo, Forstell, and Doe fell below an objective standard of reasonableness. There is no plausible reason to keep a juror who is potentially biased

13

against your client on the panel. Petitioner likely satisfies the first prong of *Strickland* and therefore demonstrates cause sufficient to excuse a procedural default. *See id.* at 488.

### 2. Prejudice

In order to show prejudice, the petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his actual and substantial disadvantage, infecting the entire trial with constitutional error. *See Carrier*, 477 U.S. at 494; *Leavitt v. Arave*, 383 F.3d 809, 838 (9th Cir. 2004). The Court has "refrained from giving precise content to the term prejudice." *Frady*, 456 U.S. at 168 (internal quotations omitted). However, the showing of prejudice is significantly greater than the showing necessary for plain error for direct appeals. *See Carrier*, 477 U.S. at 493-94; *Frady*, 456 U.S. at 166-68.

I previously found that petitioner's ineffective assistance claim does not satisfy the second prong of *Strickland* and therefore cannot establish prejudice. Dkt. No. 25 at 16. But petitioner points out that juror bias is a structural error. Amended Traverse (Dkt. No. 44) at 16. Where ineffective assistance of counsel results in a structural error, there is a presumption of prejudice. *Carrera v. Ayers*, 670 F.3d 938, 956 (9th Cir. 2011).

No evidence on the record conclusively demonstrates the Juror No. 22 was actually biased. When underlying facts concerning cause or prejudice, such as the existence of juror bias, are in dispute, a district court should conduct an evidentiary hearing. *See Hines v. Enomoto*, 658 F.2d 667, 674 (9th Cir. 1981). Therefore, petitioner should be given the opportunity to explore whether Juror No. 22's relationship with three witnesses in the case resulted in juror bias. If, as a result of the evidentiary hearing, I find that Juror No. 22 was biased, the second prong of *Strickland* would be satisfied and prejudice established. Such a finding would make Claim 1 ripe for resolution.

### III. RESPONDENT'S MOTION TO DISMISS OR STAY HABEAS PETITION

Respondent filed a motion to dismiss or stay habeas petition as unexhausted on September 25, 2017, arguing that the new declarations filed by petitioner "fundamentally alter the entire factual basis of petitioner's juror misconduct claim" and has not been presented in state court. Mot. at 1 (Dkt. No. 45). Petitioner counters that the declarations merely "supplement and clarify" the record and do not change the "ultimate question of disposition." Opp'n at 3-4 (Dkt. No. 46). I

agree.

In order to exhaust a claim, the petitioner must fully and fairly "present both the factual and legal basis for the claim to the state court." *Robinson v. Schriro*, 595 F.3d 1086, 1101 (9th Cir. 2010); *see also* 28 U.S.C. § 2254(b) (1994). "Full and fair presentation . . . requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009).

Although petitioner uses the new declarations to clarify some factual inaccuracies from previous declarations, he has undeniably presented both "the legal and factual basis of his federal constitutional claim" to the state court. *Robinson*, 595 F.3d at 1102. Some of the underlying evidence is different than what was presented to the state courts, but he previously identified facts demonstrating that Juror No. 22 was related to three key witnesses in the case and was dishonest during voir dire. The state courts denied the request for an evidentiary hearing, and there is no reason to think on the current record that they would have ruled differently. The crux of petitioner's case remains the same, and the new evidence does not change the conclusion that petitioner has satisfied the exhaustion requirement. "[A]s long as the ultimate question for disposition has remained the same in state and federal court, . . . variations in the legal theory or factual allegations urged in its support are entirely legitimate." *Id.* at 1102 n. 14 (internal quotations omitted). Therefore, respondent's motion is DENIED.

## CONCLUSION

Respondent's motion for reconsideration is DENIED. Respondent's motion to dismiss or stay habeas petition as unexhausted is DENIED. The Court will hold the evidentiary hearing on October 17th and 18th as scheduled to resolve the issue of juror bias.

**IT IS SO ORDERED.**

Dated: October 5, 2017

William H. Orrick
United States District Judge