UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELI E. GARCIA,
Petitioner,

v.

JIM MACDONALD, et al.,
Respondents.

Case No. 15-cv-04484-WHO

**ORDER DENYING PETITION FOR HABEAS CORPUS FOLLOWING EVIDENTIARY HEARING**

Petitioner Eli Garcia filed a petition for habeas corpus, asserting eight claims of relief. His claim of juror bias is the only remaining claim. The claim is based on Garcia's contention that a juror at his trial, Juror No. 22, was dishonest in her responses at voir dire about her familial relationship to the victim and the victim's mother and grandmother, and that Juror No. 22 was necessarily biased against him due to those familial relationships. After holding an evidentiary hearing to develop the record, I find no evidence that Juror No. 22 was dishonest or biased against Garcia, and as a result I DENY his juror bias claim as well as his petition for habeas corpus relief.

## BACKGROUND

## I. BACKGROUND

A complete background of Garcia's state criminal case can be found in my March 1, 2017 Order. Dkt. No. 25. For the sake of this Order, I detail only the facts pertinent to Garcia's claim of juror bias.

Garcia's petition raised eight claims for habeas corpus relief. In my March 1, 2017 Order, I denied relief under Claims 2 through 8.[1] Concerning Claim 1, Garcia alleges that Juror No. 22 was biased and that he was, therefore, denied a fair trial under the Fifth, Sixth, and Fourteenth

[1] I also denied Garcia's ineffective assistance of counsel claim based on the juror bias issue raised in Claim 1. March 1, 2017 Order at 16. The only habeas claim left, therefore, is the direct juror bias claim.

Amendments. He claims that Juror No. 22 is related to several key individuals in his criminal case, including the victim Jane Doe, the victim's mother Stacey Forstell, and the victim's grandmother Sandy Castaldo. And although Juror No. 22 indicated that Castaldo was her cousin during the voir dire process, she did not disclose any relationship to Forstell or Doe. Garcia asserts that this omission was misleading and dishonest and suggests bias on the part of Juror No.22. Pet. 12-13. He also asserts that Juror No. 22's familial relationship to the victim and the other case participants is sufficient to find implied bias.

During voir dire, the presiding judge listed potential witnesses in the case, including Doe, Forstell, and Castaldo. Augmented Reporter's Transcript ("ART") at 29 (Dkt. No. 15-4). The court then asked if any potential jurors were familiar with the names of the potential witnesses. *Id.* Juror No. 22 volunteered that she was related to Castaldo:

> THE COURT: Anyone recognize any of the persons involved in this case? Juror No. 22?
>
> PROSPECTIVE JUROR NO. 22: I heard you say the name Sandy Castaldo.
>
> THE COURT: Yes.
>
> PROSPECTIVE JUROR NO. 22: That's my cousin.
>
> THE COURT: Again, do you see her a lot?
>
> PROSPECTIVE JUROR NO. 22: No, I do not.
>
> THE COURT: When is the last time you saw her?
>
> PROSPECTIVE JUROR NO. 22: I saw her at the bank, and I'm going to say three months ago. She's married to my cousin Sal.
>
> THE COURT: I don't know the nature of her testimony. And there are witnesses who may or may not be at the scene of an alleged incident. There are other witnesses who take statements. There are other witnesses who are quite peripheral. I have no idea where she falls on that continuum. I'll let the attorneys ask you some questions.
>
> Let's assume, for the sake of argument, she came in and she testified. Would you evaluate her testimony by the same standards you would any other witness?
>
> PROSPECTIVE JUROR NO. 22: Yes. Yes, I would.
>
> THE COURT: Do you think you would believe anything she said

just because she's your cousin?

PROSPECTIVE JUROR NO. 22: No, I'm not well, I'm not that close to her. I mean, I just thought I should let you know I'm related.

THE COURT: We do need to know you're related. It's very important.

ART at 76-77.

Although Castaldo, Doe, and Forstell are all related – Castaldo is Doe's grandmother and at the time was her guardian, and Forstell is Doe's mother – Juror No. 22 only volunteered that she knew Castaldo.[2]

In his petition for state habeas relief, which Garcia incorporates by reference in his federal petition, Garcia submitted declarations from Forstell and Juror No. 22. In her declaration, Juror No. 22 elaborated on her relationship to the case participants and explained why she failed to disclose more information during voir dire:

> 1. I served as a juror in the trial of *People v. Eli Garcia*, Monterey County Case No. SS120091A. I was Juror No. 22.
>
> 2. Salvador Castaldo is my cousin. Sandy Castaldo is married to Salvador. Stacey Castaldo nee Forstell is Mr. Castaldo's daughter by a prior marriage. [Doe] is Stacey's daughter.
>
> 3. During voir dire, I identified Sandy Castaldo as my cousin. I anticipated that I would be dismissed from serving when I disclosed my relation to Sandy. I was not trying to get out of jury service. However, I expected that my relation to a witness would automatically disqualify me from service in the case.
>
> 4. I expected that the Court or the attorneys would ask me about my relation with Stacey Forstell. I was never asked about my relation to Stacey. If asked, I would have disclosed that I was related to Stacey.
>
> 5. I did not recognize the name [Doe], Stacey's daughter. [Doe] was the victim in the case.
>
> 6. [Doe] and Sandy testified during the trial.

Declaration of [Juror No. 22] (Dkt. No. 15-6).

In her declaration, Forstell also explained Juror No. 22's relationship to the case

[2] At trial, only Doe and Castaldo testified. Collectively, I will refer to these three as the "case participants."

participants:

1. I am [Doe]'s mother. I am thirty (30) years old. My maiden name is Stacey Castaldo. I married and took my current name in 2008.

2. My father is Salvatore "Sal" Castaldo.

3. Sal has three sisters. One of those sisters is Anne Jay. Anne Jay is very close with her and Sal's cousin, [Juror No. 22]. Anne and [Juror No. 22] have been close since I was a child.

4. When I was a child, Anne and [Juror No. 22] operated the Grand Deli in Pacific Grove, California. I spent a substantial amount of time with Anne and [Juror No. 22] at Grand Deli before the age of fourteen. I also spent time at [Juror No. 22's] house and saw [Juror No. 22] at various family functions.

5. When I was twelve years old, my mother and father divorced. When I was fourteen, my father married his current wife, Sandy Castaldo. There was a significant amount of turmoil in my family at that time, and I had much less interaction with many of my relatives.

6. I have not had substantial interaction with [Juror No. 22] since my father remarried. I am friends with [Juror No. 22] on Facebook and was friends with her before October 2012. In October 2012, my username on Facebook was "Stacey Forstell."

7. I became pregnant with [Doe] and gave birth to her when I was fourteen years old. When [Doe] was less than one year old, I was unable to take custody of her, and Sal and Sandy assumed responsibility of [Doe].

8. Sal and Sandy retained custody of [Doe] throughout her childhood.

9. I am informed and believe that when [Doe] was a child she met and spent time with [Juror No. 22] when she visited her aunt Anne.

10. In January 2011, [Doe] and Eli Garcia went to Los Angeles. Mr. Garcia was arrested in Los Angeles. I traveled to Los Angeles to meet [Doe]. [Doe] lived with me immediately after she returned from Los Angeles and I have since gained legal custody of [Doe].

11. Prior to the trial of Eli Garcia, I had several conversations with the prosecutor in this case, Mr. Breeden. I also met on several occasions with the Victim Witness Advocate that had been assigned to [Doe]. Her first name was Elma.

12. Mr. Breeden subpoenaed me to appear as a witness in the trial of Mr. Garcia.

13. On October 23, 2012, I went to the Monterey County Superior Court for Mr. Garcia's trial. Initially, Sandy and I were asked to wait in a separate room from all other potential witnesses. When Sandy entered the courtroom to testify, I waited in the courtroom hallway. When Sandy exited the courtroom, she was crying and exclaimed: "Your f**king cousin is on the jury!" She explained that she was referring to [Juror No.

22].

> 14. Immediately after I learned that [Juror No. 22] was on the jury, I informed the Victim Witness Advocate, Elma about our family's relation to [Juror No. 22]. The court was on break at this time. Elma informed me that she would tell Mr. Breeden, and she entered the courtroom. Elma exited the courtroom and told me that she had informed Mr. Breeden and that Mr. Breeden said that I was excused from the subpoena and would not be testifying. [Doe] and I went to the victim's compensation office. I did not enter the courtroom.

Declaration of Stacy Forstell (Dkt. No. 1-1 at ECF pg. 24).

Largely based on Juror No. 22's answers at voir dire and these declarations, I granted petitioner's request for an evidentiary hearing in order to determine definitively if Juror No. 22's answers at voir dire and her failure to more fully disclose her relationships violated Garcia's constitutional rights. *See* March 1, 2017 Order at 11-15. I was concerned that the "record [] raises enough suspicions of juror dishonest to warrant further exploration of bias." *Id.* at 12-13. Specifically, I found that Juror No. 22's answers concerning why she did not inform the court of her relation to Forstell, her failure to disclose her relation to Doe, and her failure to inform anyone when she recognized Doe during trial brought her partiality into question.

Respondents subsequently moved for leave to file an amended answer, noting that after they filed the original answer, the United States Supreme Court ruled that the procedural bar detailed in *In re Dixon*, 41 Cal. 2d 756 (1953) (the "*Dixon* bar") was a valid procedural default, reversing prior Ninth Circuit authority. Motion for Leave at 1 (Dkt. No. 30); *see Johnson v. Lee*, 136 S.Ct. 1802, 1804 (2016) (per curiam). Respondents sought to include references to the *Dixon* bar in their amended answer. I granted respondents leave to file an amended answer, and Garcia subsequently filed an amended traverse. Attached to Garcia's amended traverse were three new declarations. Dkt. No. 44-1. Most pertinent were the new declarations of Forstell and Juror No. 22, which expanded on some facts and corrected some inaccuracies. For example, Forstell's initial declaration submitted in support of Garcia's state court petition incorrectly detailed her relationship with another cousin who shares the same first name as Juror No. 22. Her second declaration cleared up the factual inaccuracies stemming from that misunderstanding. Second Declaration of Stacy Forstell (Dkt. No. 44-1 at ECF pg. no. 6).

Juror No. 22 also supplied a new declaration, in which she expanded on her relationship to

Castaldo, Forstell, and Doe. Her expanded assertions included the following:

> 14. When I was asked whether I recognized any of the potential witnesses in the Garcia case, I did not immediately recognize that Stacy Forstell was Stacy Castaldo from my family. After I realized that I knew Stacy, I did not tell the court because I was afraid to bring it up. I have a fear of public speaking, and talking in front of the court filled me with anxiety. I also assumed that the court would ask me questions about my family relationship with the witnesses.
>
> 15. Prior to the trial, I remember seeing social media about Kayli's disappearance while she was missing in connection with this case. I did not inform the court of this fact because I was afraid to bring it up and because I expected the court to ask me questions about my family relationship with Kayli.
>
> 16. I do not believe that I was given enough time to reflect on my ability to be impartial before telling the court that I could be. Reflecting on it now, I do not believe that I was impartial in light of my family relationships with Sandy, Stacy, and Kayli.

Second Declaration of Juror No. 22 (Dkt. No. 44-1 at ECF pg. no. 2).

After filing their amended answer, respondents filed a motion for reconsideration of my order granting an evidentiary hearing. Dkt. No 45. They argued that petitioner's juror bias claim was procedurally barred pursuant to the "*Dixon* bar." Respondents also moved to dismiss Garcia's petition or stay the petition as unexhausted, arguing that new declarations filed by petitioner altered the factual basis of Garcia's juror bias claim and had not been presented in state court. Dkt. No. 45.

I denied respondents' motions. Regarding the motion to dismiss or stay, I concluded that "[a]lthough petitioner uses the new declarations to clarify some factual inaccuracies from previous declarations, he has undeniably presented both 'the legal and factual basis of his federal constitutional claim' to the state court" such that the claim is exhausted. October 5, 2017 Order (Dkt. No. 48) at 15. And in denying respondents' motion for reconsideration, I agreed that the *Dixon* bar applies to petitioner's claim. But I noted that petitioner may overcome that bar by demonstrating that he meets one of its exceptions, such as cause and prejudice. *Id*. at 13. Concluding that petitioner had demonstrated cause and that the existence of juror bias would constitute prejudice, I found that his claim could satisfy the cause and prejudice exception to the *Dixon* bar. *See Carrera v. Ayers*, 670 F.3d 938, 956 (9th Cir. 2011). Because the record as

presented did not conclusively demonstrate whether Juror No. 22 was biased, the evidentiary hearing was necessary. *Id*. at 14. The evidentiary hearing was held on October 17, 2017.

## II. THE EVIDENTIARY HEARING

At the evidentiary hearing, both Juror No. 22 and Forstell testified about their familial relationships as well as their feelings regarding the sentence imposed on Garcia after the jury found him guilty. Juror No. 22 also testified about her service as a juror.

### A. Forstell's Testimony

Forstell's testimony largely centered on the relationship between herself and Juror No. 22, as well as their general family dynamics. Forstell testified that, even though Juror No. 22 is her father's second cousin, she considered Juror No. 22 to be a "close" family member. Evidentiary Hearing Transcript (Transc.) at 12:15 (Dkt. No. 51). Forstell further detailed her past interactions with Juror No. 22. Prior to the divorce of Forstell's parents in 1995, they would host large family gatherings, which both Forstell and Juror No. 22 would attend. *Id.* at 13:4-18, 18:5-8. Outside of these family gatherings, which stopped after the divorce, the interactions between Forstell and Juror No. 22 were limited to small talk when Juror No. 22 visited a store near her home, where Forstell worked from 2000 to 2002. *Id.* at 14:5-13. Forstell and Juror No. 22 did not have any other social interactions, including through social media such as Facebook, outside of the family gatherings that stopped in 1995 and during Forstell's employment at the store, which ended in 2002. *Id.* at 26:4-18.[3]

Forstell also testified regarding her thoughts on the case against Garcia and the sentence that he received. Specifically, Forstell felt that the prosecution of Garcia was not fair and that Garcia's "very hefty sentence" should have been shorter. *Id.* at 22:20-25; 23:1-24:7.

### B. Juror No. 22's Testimony

Juror No. 22's testimony covered her relationship with Forstell, Castaldo, and Doe. As to

[3] While in her state court declaration, Forstell declared she was friends with Juror No. 22 on Facebook, she clarified at the evidentiary hearing that she was not and that her state court declaration on that point was the result of a mistake. *Id*. at 26:4-8; *see also* Second Forstell Declaration (Dkt. No. 44-1 at ECF pg. no. 6) ¶¶ 5-7 (explaining Forstell's confusion between two relatives with the same first name).

her relationship with Forstell, Juror No. 22's testimony was consistent with Forstell's. She described their communications as limited to the family gatherings and brief interactions at the store near her home. *Id.* at 36:6-15. Concerning Castaldo, Juror No. 22 testified that she did not care for Castaldo, and nothing in Juror No. 22's testimony suggests that she and Castaldo have a relationship beyond Castaldo's marriage to Juror No. 22's second cousin. *See id.* at 54:4-13. And as to the relationship between Juror No. 22 and Doe, prior to Garcia's trial they had never met, *id.* at 48:21-49:3, and Juror No. 22 did not know Doe's name. *Id.* at 46:6-7.

As to her service as a juror, Juror No. 22 testified that: (i) when the list of potential witnesses was read during voir dire, Juror No. 22 recognized Castaldo's name but did not recognize the names of Forstell or Doe, *id.* at 38:16-23, 39:11-18; (ii) she told the court that she recognized Castaldo's name because Castaldo was married to her second cousin, *id.* at 46:10-21; (iii) when asked if she could be impartial despite this relation, Juror No. 22 affirmed that she could, *id.* at 63:13-19; and (iv) Juror No. 22 expected to be excused from the jury based on her relation to Castaldo. *Id.* at 50:10-20.

Juror No. 22 further explained that she did not realize who Forstell or Doe were, or her relation to them, until after the trial had started. *Id.* at 49:9-50:1, 60:16-61:14. She testified that she did not try to hide her relation to Forstell or Doe. *Id.* at 50:21-25. She just did not recognize Forstell's married name and did not know Doe. *Id.* at 49:9-17, 60:6-9. It was not until Doe's testimony that she pieced together that they were related. *Id.* at 51:7-12. As Doe testified during the trial, Juror No. 22 *then* remembered an Amber Alert that was posted by another family member regarding Doe's disappearance and connected it to the underlying case. *Id.* at 46:22-47:10. She explained that she did not inform the Court of her new understanding as to her relationship to Doe during the trial because she had previously identified Castaldo as her cousin, and she did not understand that she might need to reveal her relation to Doe. *Id.* at 51:1-14.

As to her conduct as a juror, Juror No. 22 testified that at the start of deliberations a member of the jury immediately wanted to find Garcia guilty on all counts. *Id.* at 55:22-25. But Juror No. 22 and "a couple of other women" insisted that the jury go through some of the counts individually and carefully consider the evidence against the prosecutor's burden. *Id.* at 56:14-

57:4. In the end, as a result of that consideration, instead of a blanket "guilty" verdict Garcia received a "not guilty" verdict for multiple counts. *Id.* at 57:14-15.

Juror No. 22 also testified about her feelings concerning Garcia's sentence. She testified that she is sympathetic to Garcia, *id.* at 58:4-5, and that she believed the amount of time that he was sentenced to was "kind of harsh" and inappropriate. *Id.* at 57:18-58:5. Despite her contrary assertion at voir dire, Juror No. 22 testified that she now believed that given her relationship with Castaldo, Forstell, and Doe, she should not have sat on the jury. *Id.* at 43:15-23. She does not think that she was a fair juror because she could not have evaluated the testimony of Castaldo and Doe the same as any other witness. *Id.* at 42:6-43:23.

## LEGAL STANDARD

### I. HABEAS CORPUS

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Petitioner raised his juror bias claim in habeas petitions before the California Court of Appeal and the California Supreme Court. His claim was summarily denied by both courts. When a federal court is presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine "whether the state court's decision is objectively reasonable." *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). The applicable standard of review for petitioner's juror misconduct claim is independent review of the record, which "is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2000). "[W]here a state court's decision is unaccompanied by an explanation the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

**II. JUROR BIAS**

The Sixth and Fourteenth Amendments guarantee criminal defendants a verdict by impartial, indifferent jurors, and the bias of even a single juror violates the right to a fair trial. *See Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998). "Accordingly, '[t]he presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice.'" *Id*. (citation omitted). However, the Constitution "does not require a new trial every time a juror has been placed in a compromising situation." *Tinsley v. Borg*, 895 F.2d 520, 524 (9th Cir. 1990) (citation omitted). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id*. (citation omitted).

**DISCUSSION**

The Ninth Circuit "recognizes three forms of juror bias: (1) 'actual bias, which stems from



United States District Court
Northern District of California

a pre-set disposition not to decide an issue impartially'; (2) 'implied (or presumptive) bias, which may exist in exceptional circumstances where, for example, a prospective juror has a relationship to the crime itself or to someone involved in a trial, or has repeatedly lied about a material fact to get on the jury'; and (3) 'so-called *McDonough*-style bias, which turns on the truthfulness of a juror's responses on voir dire' where a truthful response 'would have provided a valid basis for a challenge for cause.'" *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013) (quoting *Fields v. Brown*, 503 F.3d 755, 766–67 (9th Cir. 2007) (en banc)). Garcia argues that Juror No. 22's failure to reveal her relation to Forstell and Doe establishes that she was biased against him or, alternatively, that she was intentionally dishonest during voir dire such that her impartiality is called into question. Further, Garcia contends that Juror No. 22's relation to Castaldo, Forstell, and Doe is sufficient to establish Juror No. 22's implied bias. I consider each argument in turn.

## I. MCDONOUGH-STYLE BIAS

*McDonough*-style bias occurs where: (1) a juror fails to answer honestly a material question on voir dire and (2) "a correct response would have provided a valid basis for a challenge for cause." *Fields*, 503 F.3d at 766–67. The Ninth Circuit has held that a "voir dire question is material when the honest response would reflect bias, prejudice or partiality against a party." *See Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1061 (9th Cir. 1997). The Ninth Circuit has further explained that *McDonough*-style bias can only be found "if the district court finds that the juror's voir dire responses were dishonest, rather than merely mistaken, and that her reasons for making the dishonest response call her impartiality into question." *Pope v. Man–Data, Inc.*, 209 F.3d 1161, 1164 (9th Cir. 2000).

Whether a juror is dishonest is a question of fact; there is no formula for identifying juror dishonesty under the first prong of the *McDonough* test. *Dyer*, 151 F.3d at 973. But the Ninth Circuit has provided some guidance. To establish that Juror No. 22 failed to answer a question honestly, Garcia must show that Juror No. 22's answers were intentionally untruthful. *See Price v. Kramer*, 200 F.3d 1237, 1254–55 (9th Cir. 2000) (no *McDonough* bias where "omissions constituted an innocent oversight"). Forgetfulness and misunderstanding do not constitute dishonesty. *See Hamilton v. Ayers*, 583 F.3d 1100, 1107 (9th Cir. 2009) (no juror bias when



United States District Court
Northern District of California

omissions on voir dire were inadvertent, not intentional).

In his petition, Garcia argued that Juror No. 22 was intentionally dishonest in not acknowledging that she recognized the names of Forstell and Doe during voir dire. He contends that Juror No. 22 knew Forstell and Doe and refused to disclose this fact. In his view, this failure to disclose demonstrates her dishonesty under *McDonough*. In my March 1, 2017 Order, I noted several reasons to believe Juror No. 22 might have realized who Doe and Forstell were during voir dire, including: Juror No. 35's explanation that she was friends with Castaldo and knew Doe as Castaldo's granddaughter; Juror No. 35's explanation that she was aware of the general circumstances of the case because, "[i]t was all over social media"; and the fact the Juror No. 22 failed to tell anyone that she knew or recognized Doe despite jurors being told to inform the court if they recognized any witnesses during trial. March 1, 2017 Order at 12. But, following hearing her testimony during the evidentiary hearing, I conclude that Juror No. 22 was not dishonest in voir dire when she failed to disclose her relationship to Forstell or Doe.

The Supreme Court has held that the assessment of juror bias is "essentially one of credibility, and therefore largely one of demeanor." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). During the evidentiary hearing, each party's counsel and I asked Juror No. 22 various questions regarding her knowledge of Forstell and Doe, as well as when she realized she knew them. Her evidentiary hearing testimony convincingly demonstrates that she did not recognize Forstell's name during voir dire because she did not know Forstell's married name. Regarding Doe, Juror No. 22 had never met her and did not know her. Juror No. 22's testimony at the evidentiary hearing does not contradict her prior declarations--it is fully consistent with them--and I find it credible. Juror No. 22 was not intentionally dishonest during voir dire.[4]

Juror 22's failure to inform the trial judge during the trial that she eventually realized who Doe was and that they were related cannot be used to undermine the honesty of her responses

[4] That the judge or counsel could have (and perhaps should have) followed up with questions about Juror 22's relationship with Forstell or Doe, does not mean that dishonesty can be imputed to Juror 22. *See, e.g.*, *Fields*, 503 F.3d at 767 (no dishonesty where juror did "not fail to volunteer details for any reason that implicated impartiality; he would have furnished them, if asked. But he wasn't asked.").



United States District Court
Northern District of California

during voir dire. Transc. at 39:11-19, 49:6-50:1. Juror 22 credibly testified during the evidentiary hearing that she believed disclosure of her relationship to Doe was unnecessary because she had already told the court of her relation to Castaldo. *Id.* at 51:1-52:9.

Based upon her testimony, I conclude that given Juror No. 22's failure to recognize the names of Forstell and Doe, her failure to disclose her relation to them at voir dire was not dishonest. Because Garcia has failed to prove the first prong the *McDonough* test, his claim fails. *See Olsen*, 704 F.3d at 1196 (noting that where juror did not answer questions dishonestly there was "no basis for a *McDonough* challenge").

## II. ACTUAL BIAS

When an allegation of juror impartiality is raised after trial, the remedy is "a hearing in which the defendant has an opportunity to prove actual bias." *Dyer*, 151 F.3d at 990 (citation omitted). "Actual bias is, in essence, 'bias in fact'—the existence of a state of mind that leads to an inference that the person will not act with entire impartiality. Actual bias is typically found when a prospective juror states that he cannot be impartial, or expresses a view adverse to one party's position and responds equivocally as to whether he could be fair and impartial despite that view." *United States v. Mitchell*, 568 F.3d 1147, 1151 (9th Cir. 2009) (citation omitted). While actual bias may be revealed by a juror's explicit admissions, more typically it is demonstrated through circumstantial evidence. *United States v. Gonzalez*, 214 F.3d 1109, 1111-12 (9th Cir. 2000).

In his petition, Garcia argued that given Juror No. 22's relation to Castaldo, Forstell, and Doe, she could not be an impartial juror. However, Juror 22's testimony at the evidentiary hearing about her role in deliberations demonstrated that she was an unbiased and fair juror. That testimony, combined with her initial affirmations that she could be impartial, defeats Garcia's assertion of actual bias.

During voir dire, Juror No. 22 stated that she could be impartial in considering Castaldo's testimony because she's "not that close to her." ART at 29. She affirmed that despite her relation to Castaldo, she could be impartial in evaluating Castaldo's testimony. It is true that at the evidentiary hearing and in her second declaration, Juror No. 22 testified that she does not believe



United States District Court
Northern District of California

she *was* a fair juror because of her relationship to Castaldo, Forstell, and Doe. But her conduct as a juror, according to her own testimony, supports her initial assertion and shows she acted impartially during jury deliberations.

At the evidentiary hearing, Juror No. 22 testified that when deliberations began, one juror wanted to find petitioner guilty on all counts immediately. But Juror No. 22 and "a couple of other women" insisted that the jury consider the counts individually rather than issuing a blanket "guilty" verdict. Transc. at 55:22-57:4. That insistence resulted in a "not guilty" verdict for multiple counts. *Id.* at 56:11-21. This testimony, coupled with her earlier explicit assertion of impartiality, shows that Juror No. 22 believed at the time that she could be impartial and then subsequently conducted herself as an impartial juror, harboring no actual bias against petitioner.

While Juror No. 22 subsequently said at the evidentiary hearing that she *now* believes she was not a fair juror because she could not have evaluated Castaldo's and Doe's testimony the "same" as other witnesses, she provided no details to support that new assertion and did not explain how her relation to Castaldo and Doe impacted her during deliberations. It is also contrary to her evidentiary hearing testimony that she, along with others, made sure to carefully deliberate all charges. *Id.* at 56:22-57:4. Based on viewing Juror No. 22 during the evidentiary hearing, I do not find her new assertion that she might not have been fair to be credible. Instead, I believe her current position is likely motivated by her belief that Garcia's sentence was not appropriate and that she is sympathetic to his plight. *See id.* at 57:18-24. But her current sympathies do not change the reality of her jury service on the underlying case. She initially stated that she could be impartial despite her relation to Castaldo. And, as a juror, she carefully considered the evidence and made a decision on Garcia's culpability based on that careful review. Nothing about her actions as a juror or her testimony at the evidentiary hearing shows actual bias on her part. Garcia's actual bias argument fails.

## III. IMPLIED BIAS

Even where actual bias has not been demonstrated, in rare instances courts can "conclusively presume" bias "as a matter of law." *Mitchell*, 568 F.3d at 1151. The Ninth Circuit has cautioned that bias should be presumed only in "extreme" or "extraordinary" cases. *Id.* It has

recognized implied bias in only two contexts: first, "in those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances," *Fields*, 503 F.3d at 770;[5] and second, "where repeated lies in voir dire imply that the juror concealed material facts in order to secure a spot on the particular jury." *Id*. As discussed above, there is no evidence that Juror No. 22 lied in voir dire. Therefore, the only question is whether an average person could remain impartial given a relationship with the case participants similar to Juror No. 22's relationships.

The Ninth Circuit anticipated that bias could be implied in a situation in which "the juror is a close relative of one of the participants in the trial." *Tinsley*, 895 F.2d at 520 (following Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. 209, 222 (1982)). But Juror No. 22's connection with the witnesses and victim in the underlying case is not sufficiently close to warrant a finding of implied bias as a matter of law. As to Castaldo, Juror No. 22 testified in voir dire that they were "not close." ART at 77. In her evidentiary hearing testimony, she confirmed that and also expressed her opinion that she did not particularly care for her. Transcr. at 54:12-13.

As to Forstell and Doe, as noted above, Juror No. 22 did not even recognize their names during voir dire. Juror 22 did not recognize Doe or understand their relationship until Doe began to recount certain details in her testimony that allowed Juror No. 22 to piece together who Doe was. This supports a finding that Juror No. 22's relationship to Forstell and Doe was attenuated and not close.

Other facts established during the evidentiary hearing further demonstrate the weakness of the familial connection between Juror No. 22 and the case participants. For example, Forstell testified that her only interactions with Juror No. 22 occurred when she was a child and her parents

[5] In *Tinsley*, 895 F.2d at 520, the Ninth Circuit discussed four general fact patterns where bias might be presumed or implied: (1) "where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will"; (2) "[t]he existence of certain relationships between the juror and the defendant"; (3) "where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern"; and (4) "where it is revealed that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial . . . or that the juror was a witness or somehow involved in the transaction."

would host family gatherings that Juror No. 22 would attend. Transc. at 26:1-18. After the divorce of Forstell's parents in 1995, the family gatherings ceased. Both Forstell and Juror No. 22 implied that the divorce of Forstell's parents and Castaldo's subsequent marriage to Forstell's father contributed to a distance in the family relationship generally. *See id.* at 18:5-7, 25:18-24. This is consistent with assertions in the declarations of Juror No. 22 and Forstell in which they place the blame for familial distance on Castaldo. *See* Second Declaration of Juror No. 22 ¶¶ 9, 13; Second Declaration of Stacy Forstell ¶ 15.

After 1995, Forstell did not interact with Juror No. 22 beyond passing greetings when Forstell worked at a store near Juror No. 22's home from 2000 to 2002. *Id.* at 26:1-18. Further, Juror No. 22 did not know basic details about the life of Forstell, such as that Forstell was married; nor did she know Doe's name. *Id.* at 45:6-7, 46:6-7. Juror 22 had never met Doe. *Id.* at 48:20-49:3.

On these facts, Garcia's claim of implied bias fails. This is not an "extreme" or "extraordinary" case in which a court should presume bias due to a "close" relationship between the Juror and a case participant. *See Fields v. Brown*, 503 F.3d at 770. There is no evidence that Juror No. 22 had a meaningful relationship with any of the participants in the underlying case. Juror No. 22 is not a "close relative" of Castaldo, Forstell, or Doe. Prior to the case, she had never met Doe nor interacted with Forstell in over 10 years, and her testimony is that she did not have a close relationship with Castaldo. Because the relationship between Juror No. 22 and the participants in the underlying case is attenuated and distant, this is not an "extreme or extraordinary" situation where bias should be presumed as a matter of law. *See, e.g., id.* at 775 ("Given Hilliard's honest response on voir dire that revealed a potentially disqualifying relationship, but not an extreme or extraordinary one, and the results of the evidentiary hearing which disclosed no actual bias, we see no basis for inferring bias now as a matter of law.").

In sum, the record as supplemented by the evidentiary hearing does not demonstrate that Juror No. 22 was biased against Garcia in any form recognized by the Ninth Circuit. Because Juror No. 22 was not biased, Garcia cannot demonstrate prejudice. His claim does not meet the cause and prejudice exception to the *Dixon* bar. Because Garcia's juror bias claim is procedurally

barred and cannot continue forward, Claim 1 is DENIED.

**CONCLUSION**

For the foregoing reasons, Garcia's only remaining claim is DENIED and his petition for habeas corpus is, therefore, fully DENIED. A certificate of appealability will issue as to Garcia's juror bias claim, as reasonable jurists could "find the district court's assessment of the constitutional claim[] debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: June 27, 2018

William H. Orrick
United States District Judge

United States District Court
Northern District of California